## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                   )
ANDREW BAKAJ,                    )
       Plaintiff,               )
                                     )
         v.                   )   Civil Action No. 1:19-cv-1580 (ABJ)
                                     )
U.S. DEPARTMENT OF HOMELAND SECURITY, )
       Defendant.           )
_____ )

## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant respectfully moves for summary judgment on the grounds that there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law. Defendant has provided justification and explanation with declarations from Darcia Rufus, Assistant Counsel to the Inspector General ("DHS OIG" or "DHS"), and Vanna Blaine of the Litigation Information Review Office ("LIRO") at the Central Intelligence Agency ("CIA OIG" or "CIA") .

In support of this motion, Defendant respectfully submits the attached memorandum of points and authorities, statement of material facts not in genuine dispute, proposed order and declarations.

                                        Respectfully submitted,

                                        MATTHEW M. GRAVES, D.C. BAR # 481052
                                        United States Attorney

                                        BRIAN HUDAK
                                        Civil Chief

                                        By: _/s/_____
                                        BENTON G. PETERSON, D.C. Bar # 10298
                                        Assistant U.S. Attorney
                                        601 D St., N.W.
                                        Washington, D.C. 20530
                                        (202) 252-2534

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| ANDREW BAKAJ, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-1580 (ABJ) |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, | ) | |
| Defendant. | ) | |

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and pertains to the request of Plaintiff Andrew Bakaj for records from the United States Department of Homeland Security Office of the Inspector General ("DHS OIG"). As set forth in the accompanying *Vaughn* Index and the declarations Vanna Blaine and Darcia Rufus, Defendant has conducted a reasonable search of agency records, has disclosed all non-exempt responsive records, and has not improperly withheld any responsive records from Plaintiff. There is no genuine issue as to any material fact, and defendant is entitled to judgment as a matter of law.

### STATEMENT OF FACTS

Defendant hereby incorporates the Statement of Material Facts Not In Genuine Dispute ("SOF"), and the declarations and exhibits referenced therein, filed contemporaneously with this Memorandum. Defendant submits the Defendant's Vaughn Index and the declarations of Darcia Rufus, Assistant Counsel to the Inspector General ("DHS OIG") and Vanna Blaine, the Litigation Information Review Office ("LIRO") at the Central Intelligence Agency ("CIA") to support DHS OIG's search for and review and processing of responsive records under FOIA. *See* Rufus Decl. ¶ 1; Blaine Decl. ¶ 1.

**LEGAL STANDARDS**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). FOIA claims are premised on an agency's improper withholding of records. *See McGehee v. CIA*, 697 F.2d 1095, 1105 (D.C. Cir. 1983). To obtain summary judgment in a typical FOIA action, an agency must satisfy two elements. First, the agency must demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can reasonably be expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). To satisfy this element, "an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (citing *Oglesby*, 920 F.2d at 68). Such agency affidavits attesting to a reasonable search "are afforded a presumption of good faith," *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004), and "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Id.* (citation omitted).

Second, "materials that are withheld must fall within a FOIA statutory exemption." *Leadership Conference on Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005). A court may grant summary judgment based solely on information in an agency's declarations if they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). After asserting exemptions, an agency

must release "[a]ny reasonably segregable portion of a record" and provide it to the requesting party "after deletion of the portions which are exempt."  5 U.S.C. § 552(b).

Once a FOIA request has been processed, a plaintiff is required to exhaust all administrative remedies before bringing an action to compel disclosure of documents.  *See* 28 C.F.R. § 16.9(c) (2012); *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004); *Oglesby*, 920 F.2d at 65.  Failure to exhaust such remedies bars the lawsuit.  *See Banks v. Dep't of Just.*, 813 F. Supp. 2d 132, 138-39 (D.D.C. 2011) (granting agency's motion for summary judgment in FOIA action where plaintiff failed to file an administrative appeal before filing the lawsuit); *Schwaner v. Dep't of Army*, 696 F. Supp. 2d 77, 81 (D.D.C. 2010) (same).

This Court reviews the agency's action *de novo*, and "the burden is on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B); *accord Casey*, 656 F.2d at 738.  Once the case comes to the Court, "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).  In deciding any motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence."  *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Liberty Lobby, Inc.*, 477 U.S. at 255.  However, where a plaintiff has not provided evidence that an agency acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations."  *Moore*, 601 F. Supp. 2d at 12.  The declarations must describe "the documents and the justifications for non-disclosure with reasonably specific detail, [and] demonstrate that the information withheld logically falls within the claimed exemption. . . ."  *Casey*, 656 F.2d at 738.

# ARGUMENT

On July 18, 2019, Plaintiff submitted a FOIA request seeking records concerning all DHS records reflecting the Office of Inspector General investigation into allegations raised by Andrew Bakaj concerning Christopher Sharpley.  Plaintiff has now brought this suit in part based on dissatisfaction with DHS's and CIA's applications of statutory exemptions.  Yet "FOIA expressly recognizes that important interests are served by its exemptions, and those exemptions are as much a part of FOIA's purposes and policies as the statute's disclosure requirement."  *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (internal quotation marks and citations omitted).  Thus, DHS had an obligation to balance and protect individuals' privacy in appropriate circumstances, to safeguard privileged materials, and to maintain in confidence certain law enforcement investigatory and procedural information that might, if disclosed, facilitate circumvention of the law.

Accordingly, as shown herein and in the attached declarations and *Vaughn* index, DHS's response to Bakaj's request was proper, and summary judgment for DHS should issue.

## I.   DHS OIG Conducted Searches Reasonably Calculated To Uncover Responsive Records.

In responding to a FOIA request, an agency must conduct a reasonable search for responsive records. *Oglesby*, 920 F.2d at 68; *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983). An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located. *Oglesby*, 920 F.2d at 68. "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Fischer*, 596 F. Supp. 2d at 42 (quoting *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal citation and quotation marks omitted)).

Thus, an agency may conduct an adequate search under FOIA without locating any responsive records. Furthermore, even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent and reasonable. *See Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). Thus, "[t]he search need only be reasonable; it does not have to be exhaustive." *Miller v. United States Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985) (citing *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68; *see also SafeCard Services v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). An agency may prove the adequacy of its search through a reasonably detailed declaration. *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982); *Goland v. CIA,* 607 F.2d 339, 352 (D.C. Cir. 1978); *Miller*, 779 F.2d at 1383 ("An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith"). Although the agency has the burden of proof on the adequacy of its search, the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir.) (quoting *SafeCard Servs.*, 926 F.2d at 1200).

Thus, once the agency has met its burden regarding the adequacy of its search, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. *Miller*, 779 F.2d at 1383. A requester may not rebut agency affidavits with purely speculative allegations. *See Carney*, 19 F.3d at 813; *SafeCard Servs.*, 926 F.2d at 1200; *Maynard v. CIA*, 986

F.2d 547, 559-60 (1st Cir. 1993). As discussed below, DHS met the reasonableness standard in conducting its search for records and is therefore entitled to summary judgment.

### 1. The DHS OIG Records System

When DHS OIG receives a FOIA request, the FOIA Unit evaluates it to determine if it is a proper FOIA request per DHS FOIA regulation 6 C.F.R. § 5.3. Generally, a FOIA request is considered proper and in compliance with DHS regulations if it is made in writing and reasonably describes the records sought and the records are under the purview of DHS OIG. For security purposes DHS OIG does not open email attachments and any FOIA requests sent via an email attachment are considered an improperly submitted FOIA request and not in compliance with DHS regulations.  Rufus Decl. ¶ 7.  If a FOIA request does not reasonably describe the records sought or it is improperly submitted, the FOIA Unit may seek clarification from the requestor or administratively close the request. If the FOIA request seeks records under the purview of a government agency other than DHS or a component other than OIG, the FOIA unit will refer the request to that government agency or component and inform the requestor to contact that agency or component directly and DHS OIG will administratively close the FOIA request.  *Id.* ¶ 8.

Perfected FOIA requests are entered into a database known as FOIAXpress and assigned a case tracking number and FOIA processor. Based upon the requestor's description of the records being sought and FOIA Unit's knowledge of the various program offices' missions, the FOIA processor identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches.  *Id.* ¶ 9.

The program offices are typically staffed with a designated point of contact (POC) who is the primary person responsible for communications between that program office and the FOIA

Unit. Each POC is a person with detailed knowledge about the operations of his/her particular program office. *Id.* ¶ 10

The POC within each of those program offices is provided with a copy of the FOIA request, an email detailing the FOIA request, instructions to conduct a search for responsive records and a search form to document information such as search terms, databases searched and any other program offices believed to have responsive records. As the program offices are best positioned to determine where responsive records are located, they are responsible for searching all locations and by all keywords that the program office reasonably believes would produce responsive records. The POCs then review the FOIA request, along with any case-specific instructions that may have been provided, and based on their experience and knowledge of their program office practices and activities, forward the request and instructions to the individual employee(s) within the program office that they believe are reasonably likely to have responsive records, if any. Once those searches are completed, the individual(s) and program offices provide any potentially responsive records along with a completed search form to the assigned FOIA processor. The FOIA processor then reviews the collected records for responsiveness, application of appropriate FOIA Exemptions and the necessity of referrals and/or consultations. *Id.* ¶ 11

OIG employees maintain records in several ways. OIG program offices use various systems to maintain records. OIG employees may store electronic records on their individual computer hard drives, their program office's shared drive, DVDs, CDs, and/or USB storage devices. The determination of whether or not these electronic locations must be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee maintains his/her files. *Id.* ¶ 12

OIG employees may also maintain hard copies of records, such as investigation files, which may be stored and maintained with an employee's office and/or the DHS OIG Sensitive Compartmented Information Facility ("SCIF"), depending on whether the records are classified. *Id.* ¶ 13

Additionally, all OIG employees have access to e-mail. OIG uses the Microsoft Outlook e-mail system. Each OIG employee stores his/her files in the way that works best for that particular employee. *Id.* ¶ 14

Once records are received the FOIA processor will make a determination whether or not the records are responsive to the FOIA request. If the records are responsive, the FOIA processor will redact information pursuant to the FOIA or Privacy Act, as appropriate, while simultaneously ensuring that all reasonably segregated non-exempt information is released. *Id.* ¶ 15

Frequently, the OIG FOIA processor must coordinate between multiple program offices to ensure the program office records are properly redacted and information is correctly segregated. Depending on the sensitivity of the records, the processor will also conduct a sensitivity review, which is an opportunity for the project owner to alert the FOIA Unit to context that they learned during the course of the investigation that might impact a FOIA analysis. A sensitivity review alerts the processor to details and other relevant factors that may be sensitive to an investigation that are not obvious from the face of the documents. *Id.* ¶ 16

The OIG FOIA processor will also coordinate with other federal government agencies and/or components regarding responsive records that contain mixed equities to ensure all information is properly redacted under the FOIA. *Id.* ¶ 17 Once the OIG FOIA processor completes the coordination efforts and all responsive records have been processed, the OIG FOIA processor releases the responsive records to the requestor. *Id.* ¶ 18

A.  *The searches in this case were legally sufficient*

DHS OIG conducted reasonable and adequate searches for records responsive to Plaintiff's requests.  The Rufus declaration establishes that DHS OIG has made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested, and therefore has conducted a search of all locations that are likely to yield documents responsive to Plaintiff's FOIA requests. Thus, DHS OIG's search for records was adequate.  *See Nation Magazine*, 71 F.3d at 892 n.7; *Miller*, 779 F.2d at 1383 ("'the search need only be reasonable; it does not have to be exhaustive.'") (citing *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).

An agency's search for records in the context of a FOIA case is adequate if it was "reasonably calculated to uncover all relevant documents."  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999).  A search is not inadequate merely because it failed to "uncover every document extant," *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); a search is inadequate only if the agency fails to "show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents."  *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

To justify its search for purposes of summary judgment, an agency may prove the adequacy of its search through a reasonably detailed declaration.  *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).  Once the agency has shown "that it conducted 'reasonably calculated' searches," the burden is on the plaintiff to identify specific additional places the agency should now search. *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013).

Plaintiff has indicated that in this action he does not contest the adequacy of the agency's search.  (Email, February 3, 2022).  The search is, however, described in the attached declarations,

which demonstrate that the agency conducted a search reasonably calculated to locate responsive records.  DHS released 32 pages of records in full, and 334 pages were released in part.

## II.  DHS OIG Properly Applied FOIA Exemptions To Withhold Limited Records.

"[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Research Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).  The *Vaughn* declaration submitted by Rufus provides the Court and Plaintiff with an explanation of DHS OIG's justification for withholding records in full or in part pursuant FOIA Exemptions 5 U.S.C. §§ 552 (b)(1), (b)(2), (b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  Rufus Decl. ¶ 24.  Because no non-exempt responsive records have been improperly withheld, summary judgment should be entered in favor of defendant.

Summary judgment in FOIA cases may be awarded "based solely on the information provided in [agency] affidavits or declarations when the affidavits or declaration describe 'the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Fischer*, 596 F. Supp. 2d at 42 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  Typically, the agency's declarations or affidavits are referred to as a *Vaughn* index, after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). The purpose of a *Vaughn* index is "to permit adequate adversary testing of the agencies claimed right to an exemption." *NTEU v. Customs*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Central v. United States Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977), and *Vaughn*, 484 F.2d at 828). Thus, the index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *NTEU*, 802 F.2d at 527 n.9.

In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), Darcia Rufus executed a declaration to support defendant's motion for summary judgment. Rufus is well-qualified to explain DHS OIG's justifications for its withholdings. In her official capacity as an Assistant Counsel to the Inspector General, she serves as legal counsel with the Information Law and Disclosure Division, advising on a wide range of information and disclosure law matters, including the Freedom of Information Act ("FOIA"). Rufus Decl. ¶ 1. Rufus' responsibilities also include assisting the U.S. Department of Justice ("DOJ") in the representation of DHS OIG in FOIA litigation, including document production. *Id.*

The Rufus declaration and the accompanying *Vaughn* index demonstrate that DHS OIG carefully reviewed responsive records and properly withheld information subject to FOIA Exemptions. Rufus Decl. ¶¶ 22-26, 48.

## A. *Exemption 1*

Exemption 1 provides that the disclosure provisions of the FOIA do not apply to matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1); *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007); *see also Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001). Here, the DHS is invoking Exemption (b)(1) to protect foreign government information classified at the "Secret" level. Rufus Decl. ¶ 27.

Darcia Rufus personally and independently examined the information withheld from Plaintiff pursuant to Exemption 1 and determined that the information satisfied the requirements of E.O. 13526, the Executive Order which governs the classification and protection of information that affects the national security, and that the information complied with the various substantive

and procedural criteria of the Executive Order. Rufus Decl. ¶ 27; *see* E.O. 13526, § 6.1(cc) (defining "National Security" as "the national defense or foreign relations of the United States"). In this case, all information that Rufus determined to be classified is marked at the "Secret" level because the unauthorized disclosure of this information reasonably could be expected to cause serious damage to national security. *Id.* (citing E.O. 13526 § 1.2 (a)(2)).

The Court of Appeals has adopted a "deferential posture in FOIA cases regarding the 'uniquely executive purview' of national security." *Larson v. Department of State*, 565 F.3d 857, 865 (D.C. Cir. 2009). In *Larson*, the Court reiterated that it has "'consistently deferred to executive affidavits predicting harm to the national security, and [has] found it unwise to undertake searching judicial review'" of the assertions in such affidavits. *Id.* (quoting *Ctr. For Nat'l Sec. Studies v. Dep't of Just.*, 331 F.3d 918, 927 (D.C. Cir. 2003)). The Court stated, moreover, that "[i]f an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, . . . the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions." *Id.*

As defendant has satisfied this standard, the Court should uphold the Agency's withholding of records under Exemption 1. "The [agency]'s arguments need only be both 'plausible' and 'logical' to justify the invocation of a FOIA exemption in the national security context." *ACLU/DOD*, 628 F.3d at 624 (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)); *accord Morley*, 508 F.3d at 1124 ("[T]he text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified."). Each of the documents withheld under Exemption 1 are identified in the Rufus Declaration and

accompanying Vaugh Index, along with a description of the information contained in the document as well as the classification applicable to the document.

Specifically, Rufus determined that the classified information continues to warrant classification at the "Secret" level and is exempt from disclosure pursuant to E.O. 13526, § 1.4(b), because it contains foreign government information (Rufus Decl. ¶¶ 27), § 1.4(c) because it concerns intelligence activities (including covert action), intelligence sources or methods, or cryptology (*id.* at ¶¶ 82-84); and § 1.4(d) because it concerns foreign relations or foreign activities of the United States, including confidential sources (*id.* at ¶¶ 85-86).  Thus, the sworn declaration provided by the DHS provides "a plausible assertion that information is properly classified."  *See Morley*, 508 F.3d at 1124.  That is sufficient to grant summary judgment.  *See id.*

Similarly, the CIA has determined that a limited amount of information in the documents at issue is currently and properly classified and appropriately withheld from disclosure pursuant to Exemption(b)(1). Blaine Decl. ¶ 12.  Specifically, the classified information is owned by and is under the control of the U.S. Government. The information falls under classification category § 1.4(c) of the Executive Order because it concerns "intelligence activities (including covert action), [or] intelligence sources and methods." *Id.* The CIA has determined that the unauthorized disclosure of the information could reasonably be expected to result in damage to national security. *Id.* Furthermore, the responsive records that contain CIA classified information are properly marked in accordance with § 1.6 of the Executive Order.

Here, the information withheld by CIA under Exemption (b) (1) consists of (i) identifying information regarding covert personnel, and (ii) information that would tend to reveal specific intelligence sources, methods, and activities.  *Id.* ¶13.

<u>Covert Personnel</u>

The CIA considers the identities of its covert employees and their activities to constitute intelligence sources and methods. *Id.* In order to carry out its mission of gathering and disseminating intelligence, the CIA places certain employees under cover to protect the fact, nature, and details of the Agency's interest in foreign activities as well as the intelligence sources and methods employed to assist in those activities. Disclosing the identity of a covert employee could expose the intelligence activities with which the employee has been involved and the sources with whom the employee has had contact. *Id.* ¶14.  Additionally, disclosing the identity of a covert employee could jeopardize the safety of the employee, his or her family, his or her sources, and even other persons with whom he or she has had contact.  *Id.*  In order for the CIA to effectively carry out its foreign-intelligence gathering mission, it is imperative that the identities of these covert personnel be protected.  *Id.*

<u>Intelligence Methods and Activities</u>.

The CIA has determined that documents at issue also contain information concerning CIA intelligence methods as well as details of specific intelligence activities. *Id.* ¶ 15.  The CIA must balance the right of the public to information with the dangers of disclosing clandestine methods it uses to collect and analyze intelligence. *Id.* ¶ 16.

Intelligence methods are the techniques and means by which an intelligence agency accomplishes the mission, and the classified internal regulations, approvals, and authorities that govern the conduct of CIA personnel.  In this case, the CIA withheld information related to the methods that it uses to collect and analyze intelligence.  This includes certain classified details regarding the Agency's information technology and security of those systems. *Id.*

For these reasons, the CIA has determined that this information remains currently and properly classified pursuant to the criteria of Executive Order 13526, as its disclosure could reasonably be expected to cause damage to national security. *Id.* ¶17.

### B.    Exemption 2

Exemption 2 applies to materials that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).  The Supreme Court has held that the statutory phrase "personnel rules and practices" refers to an agency's "rules and practices dealing with employee relations or human resources." *Milner v. Dep't of Navy*, 562 U.S. 562, 570 (2011). Therefore, Exemption 2 only encompasses information that pertains solely to "the conditions of employment in federal agencies—such matters as hiring and firing, work rules and discipline, compensation and benefits." *Id.*  However, "it does not exempt 'matters [that are] subject to . . . a genuine and significant public interest[.]" *Sheridan v. OPM*, 278 F. Supp. 3d 11, 19 (D.D.C. 2017) (quoting *Rose*, 425 U.S. at 369) (alterations in original); *see also Shapiro v. Dep't of Just.*, 153 F. Supp. 3d 253, 278–80 (D.D.C. 2016) (explaining that the "public interest" limitation from *Rose* survives *Milner*).

The CIA properly relies on Exemption 2 because the CIA determined that a limited amount of information in the records at issue is exempt from release pursuant to Exemption (b) (2), because the information pertains solely to internal personnel rules. Specifically, the information discusses CIA guidance on disciplinary measures available to CIA supervisors.  This type of information falls squarely within the material protected under Exemption (b) (2), because it relates to the Agency's personnel rules, it is solely about those personnel rules, and it consists of information that the Agency keeps for its own internal use.  Blaine Decl. ¶18.

This information pertains to employee relations and human resources. Specifically, it pertains to the selection and hiring of computer forensic specialists and practices that govern the performance appraisal process. *Id.*; *see, e.g., Sack v. Dep't of Just.*, 138 F. Supp. 3d 10, 12 (D.D.C. 2015) (documents relating to the selection process for FBI Polygraph Examiners properly withheld under Exemption 2).

This information was also created exclusively for internal use, to enable staff to effectively consider and possibly implement disciplinary rules. Blaine Decl. ¶ 18. The FOIA Improvement Act permits agencies to withhold records under a FOIA exemption only if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). Accordingly, "an agency must identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials and connect the harms in a meaningful way to the information withheld." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019). The CIA and DHS have done that here. The CIA explains that disclosure of this type of internal information could foreseeably harm the CIA by making internal personnel rules accessible to our adversaries. *Id.*

In *Milner*, the Supreme Court identified three criteria for FOIA Exemption 2 to apply: (1) the information must be related to "personnel" rules and practices; (2) the information must relate "solely" to those personnel rules and practices; and (3) the information must be "internal." *Milner*, 562 U.S. at 569-570 n.4. Because each of these requirements is met here, the CIA correctly applied FOIA Exemption 2. Blaine Decl. ¶ 18.

### C. Exemption 3

FOIA Exemption 3 provides that FOIA does not apply to matters that are "specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The sole issue for decision "is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007); *see also Fitzgibbon v. CIA*, 911 F.2d 755, 762 (1990) (Exemption 3 withholdings justified because "the congressional intent to withhold is made manifest in the withholding statute itself."); *Braun v. Postal Serv.*, 317 F. Supp. 3d 540, 549 (D.D.C. 2018) (concluding that the Inspector General Act was a qualifying statute under Exemption 3 and determining that information was exempt under Exemption 3 because it was specifically exempted from disclosure by statue).

Here, DHS OIG has identified the following categories of information withheld under Exemption 3, Rufus Decl. ¶ 28, and explained its justification for invoking this exemption, Rufus *Id.* ¶ 28-29. Specifically, Section 7(b) of the IG Act provides that "'the Inspector General shall not, after receipt of a complaint or information from an employee, disclose the identity of the employee without the consent of the employee, unless the Inspector General determines such disclosure is unavoidable during the course of the investigation.'" *Id.* (quoting _ 5 U.S.C. App. 3 § 7(b)).

Thus, the names of any employees who provided information during the course of the DHS OIG whistleblower investigation concerning the possibility or existence of any activity that constituted a violation of law was afforded confidentiality and privacy protection under Exemption 3. As a result of DHS OIG's consultation with other federal government agencies, information was

also withheld under (b)(3) by the CIA. *Id.* Some of the information withheld in this case under Exemption 3 on behalf of the CIA is exempt from disclosure under the Central Intelligence Agency Act of 1949 and/or National Security Act, as discussed below.  *See* Blaine Decl. ¶¶ 19-23.

Section 102A(i) (1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024 (the "National Security Act"), and Section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 3507 (the "CIA Act"), apply to certain withholdings. The National Security Act provides that the Director of National Intelligence ("DNI") "shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024. Under the direction of the DNI pursuant to section 102A of the National Security Act, and consistent with Section l.6(d) of Executive Order 12333, the CIA is authorized to protect CIA sources and methods from unauthorized disclosure.  Accordingly, the CIA relies on the National Security Act to withhold information that would reveal intelligence sources and methods. Section 6 of the CIA Act similarly protects "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency" from disclosure. 50 U.S.C. § 3507.

It is well established that the respective provisions of the National Security Act and the CIA Act constitute withholding statutes in accordance with Exemption (b) (3). The provisions in both statutes meet the requirements for this exemption because they: (1) state that "the matter be withheld from the public in such a manner as to leave no discretion on the issue[,]" and "establish[] particular criteria for withholding or refer[] to particular types of matter to be withheld .... " 5 U.S.C. § 552(b) (3) (A) (i)-(ii). *See CIA v. Sims*, 471 U.S. 159, 167 (1985) (holding that the National Security Act qualifies as a withholding statute under Exemption 3).

Exemption (b) (3) in conjunction with the National Security Act applies to certain intelligence sources and methods of the Agency.  Blaine Decl. ¶22.  The documents in this matter

contain descriptions of intelligence methods exempt from disclosure under the National Security

Act, such as intelligence-gathering capabilities, actions taken by the CIA's Office of the Inspector

General ("CIA OIG") or other divisions of the Agency to perform their functions, and procedures

used to categorize classified information.  *Id.*

In addition, pursuant to Section 6 of the CIA Act, the CIA withheld the titles, names,

functions, and organizational information of CIA employees.  Blaine Decl. ¶23.  In effort to

balance the informational needs of the public, however, the CIA did not withhold the names of

CIA employees serving in certain senior positions (e.g., the CIA's Inspector General), because the

CIA has acknowledged who holds those positions. *Id.*

The Supreme Court and D.C. Circuit have described the scope of Exemption 3 as

"sweeping."  *Id.*  at 764.  In considering its contours with respect to intelligence sources and

methods, courts "accord substantial weight and due consideration to the CIA's affidavits."  *Id.*

(*citing King v. Dep't of Just.*, 830 F.2d 210, 217 (D.C. Cir. 1987)).  The exemption extends to any

material that "relates to" intelligence sources and methods.  *Id.*

With respect to intelligence sources, it does not matter that a certain contact between the

CIA and a foreign official might be considered "nonsensitive," because "apparently innocuous

information can be protected and withheld."  *Id.* (*citing Sims*, 471 U.S. at 176).  Indeed,

"information from ordinary private citizens – information from contacts that are as 'nonsensitive'

as any imaginable – is a vital part of the Agency's congressionally-mandated function and indeed

composes 'one of the greatest repositories of intelligence that we have.'"  *Id.*  Even unwitting and

potential sources are exempt from disclosure.  *Id.* at 762.

Exemption 3 permits similarly broad withholding to protect intelligence methods.  In

*Fitzgibbon*, the Court upheld the withholding of even information related to intelligence methods

that is considered "so basic and innocent that its release could not harm the national security or betray a CIA method." 911 F.2d at 762. The Supreme Court has emphasized that it is not the province of the judiciary to determine whether a method should be (or should not be) disclosed:

> [I]t is the responsibility of the Director of Central Intelligence, not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process.

*Sims*, 471 U.S. at 180. For that reason, it is insufficient to argue that an intelligence method must be disclosed if it is widely known – in considering potential harm, courts "must take into account . . . that each individual piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance itself." *Fitzgibbon*, 911 F.2d at 763 (quoting *Gardels v. CIA*, 689 F.2d 1100, 1106 (D.C. Cir. 1982)).

In this case, the protections of the National Security Act apply to the same information for which Exemption 1 was asserted, as well as other information that would reveal sources and methods of the Agency, such as techniques used by the CIA to assess and evaluate intelligence and the sources of intelligence information. Although neither the National Security Act nor the CIA Act requires the CIA to identify or describe the damage to national security that reasonably could be expected to result from the unauthorized disclosure of information covered by the statutes, the CIA indicates that the release of the information at issue is reasonably likely to significantly impair the CIA's ability to carry out its core mission of gathering and analyzing intelligence. *See* Blaine Decl. ¶ 24.

## D. Exemption 5

Exemption 5 of FOIA allows the withholding of inter- or intra-agency records that would not be available by law to a party other than an agency in litigation with the agency. 5 U.S.C.

§ 552(b)(5).   Pursuant to Exemption 5, the three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege.  *Berger v. IRS*, 487 F. Supp. 2d 482, 498-500 (D.N.J. 2007).

In applying these deliberative process privilege withholdings, Defendants conducted a foreseeable harm analysis for each category of records and segregated non-deliberative facts, to the extent required, withholding such material only when it found it was inextricably intertwined with agency deliberations.   5 U.S.C. § 552(a)(8)(A)(i)(I); *see, e.g.*, Rufus Decl. ¶ 31, Vaughn Index, p. 8; Blaine Decl. ¶ 25.   These documents withheld pursuant to Exemption 5 as part of the deliberative process privilege reflect pre-decisional and deliberative versions of Defendants' work products, and they show the internal development of the final positions taken by Defendants' decisionmakers.  *See, e.g.*, Rufus Decl. ¶ 31, Vaughn Index, p. 8; Blaine Decl. ¶¶ 25-28.   The disclosure of any of these deliberative materials would reveal the evolving thought process of all levels of Defendants' employees when providing guidance, recommendations, and other types of feedback.  *See, e.g.*, Rufus Decl. ¶ 31, Vaughn Index, p. 8; Blaine Decl. ¶¶ 25-28.  Disclosure of documents that contain this information would hamper Defendants' employees' ability to engage in the candid 'give and take' to further refine agency actions.   *See, e.g.*, Rufus Decl. ¶ 31, Vaughn Index, p. 8; Blaine Decl. ¶¶ 25-28.

In short, releasing the redacted information would chill or deter Defendants' employees from engaging in the candid and frank discussions that are so important and necessary to the full and proper development process of important law enforcement policies.   The Court has held that this type of chilling effect adequately fulfills the requirements of 5 U.S.C. § 552(a)(8)(A)(i)(I).  *See Amadis v. Dep't of State*, 971 F.3d 364, 370–73 (D.C. Cir. 2020).   Because the materials are

pre-decisional and deliberative, Defendants properly protected the information withheld under Exemption 5 based on the deliberative process privilege.

### Deliberative Process Privilege

The deliberative process privilege applies to information that is both predecisional and deliberative. *Alexander v. FBI*, 186 F.R.D. 154, 163 (D.D.C. 1999). *See also Cobell v. Norton*, 213 F.R.D. 1 (D.D.C. 2003); *Access Reports v. Dep't of Just.*, 926 F.2d 1192, 1194 (D.C. Cir. 1991). "[T]he statement or document must have been 'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters. Put another way, predecisional materials are not exempt merely because they are predecisional; they must also be part of the agency give-and-take of the deliberative process by which the decision itself is made.'" *Cobell*, 213 F.R.D. at 5 (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)). "A document [or information in another form] is 'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates." *Hinckley v. United States*, 140 F.3d 277, 284 (D.C. Cir. 1998) (quoting *Senate of Puerto Rico*, 823 F.2d at 585-86). It is deliberative if it was "part of the agency give-and-take by which the decision itself if made." *Senate of Puerto Rico*, 823 F.2d at 585-86. "The agency must establish what deliberative process is involved, and the role played by the documents in issue in the course of what process." *Hinckley*, 140 F.3d at 284.

As Ms. Blaine attests, the CIA invoked the deliberative process privilege in this matter to protect initial comments on the classification level of a particular document. Blaine ¶ 27. The record reflects the CIA's internal and confidential decision-making process on the proper classification level of the document at issue. It does not convey final Agency viewpoints on a

particular matter, but rather reflects a consideration, opinions, options, and approaches to the process. *Id*.

The CIA has reviewed that the document withheld in part pursuant to the deliberative process privilege and has determined that, to the extent the information withheld pursuant to the deliberative process privilege contains any factual material, that content is part and parcel of the deliberations, and its disclosure would expose or cause harm to the CIA deliberations. *Id.* ¶ 28. The CIA has determined that the disclosure of facts in these documents would reveal the nature of the preliminary recommendations and opinions preceding the final determinations. *Id.* Disclosure of this document would inhibit the frank communications and free exchange of ideas that the privilege is designed to protect. *Id.* If the withheld information were released, CIA employees may hesitate to offer their candid opinions to superiors or coworkers, and such self-censorship would tend to degrade the quality of Agency decisions. Additionally, revealing this information could mislead or confuse the public by disclosing rationales that did not form the basis for the Agency's final decisions.

**Attorney-Client Privilege**

Exemption 5 further incorporates the attorney-client privilege, which protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977). In FOIA cases, the agency is typically the "client" and the agency's lawyers (or lawyers at the Department of Justice) are typically the "attorneys" for the purposes of the attorney-client privilege. *See In re Lindsey*, 148 F.3d 1100, 1105 (D.C. Cir. 1998) (citing *Coastal States Gas Corp.*, 617 F.2d at 863). "The attorney-client privilege protects confidential

communications from clients to their attorneys made for the purpose of securing legal advice" and "communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.' " *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting In re Sealed Case, 737 F.2d 94, 98–99 (D.C. Cir. 1984)). Information withheld from Plaintiff by DHS under Exemption 5 involves attorney-client privileged communications. Rufus Decl. ¶ 31. The Attorney-Client Privilege exist to both protect and encourage full and frank communication between attorney and client. *Upjohn Co. v. United States,* 449 U.S. 383, 392 . Under the Attorney-Client Privilege, clients may speak candidly and honestly, disclosing all relevant information to assist their attorney in providing accurate and well-reasoned professional advice. . *Swidler & Berlin v. United States,* 524 U.S. 399, 407–08, (1998).The information that has been withheld under this privilege consists of confidential communications between a DHS OIG witness and an attorney seeking legal advice regarding a claim of retaliation, discussions between an employee and agency counsel seeking advice on a purposed course of action as well as counsel's opinion, and DHS OIG's investigative personnel and the Department of Justice counsel relating to a legal matter, in which professional advice was sought regarding the investigation. *Id.* These communications include confidential facts provided by a client and an attorney's advice and opinions based on those facts. The withholding of such communications protects sensitive information from being disclosed. This information was redacted only in part, as all non-privileged factual information was segregated and released to the Plaintiff.

The CIA also has asserted Exemption (b) (5) for certain information that satisfies the threshold requirement of the exemption, as it consists of material exchanged among counsel at two Executive branch agencies. Blaine Decl. ¶29. The CIA has determined that this same information is also protected by the deliberative process privilege and the attorney work-product privilege.

.

**Attorney Work-Product Doctrine**

In the FOIA context, the attorney-work-product privilege differs from the deliberative-process privilege in that the work-product doctrine "does not distinguish between factual and deliberative material." *Jud. Watch, Inc. v. Dep't of Just.*, 432 F.3d 366, 371. Thus, "any part of a document prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under [E]xemption 5," and, thus, "segregability is not required." *Id.* The CIA also has asserted attorney work-product privilege for certain documents in order to protect documents and other memoranda prepared by or at the direction of Agencyattorneys in contemplation of litigation. Blaine Decl. ¶ 29. Specifically, the privilege was asserted here to withhold a response to a request for information from the Office of the Inspector General of the Intelligence Community, and communications between an Agency attorney and an attorney at the Office of the Inspector General of the Intelligence Community. These documents were created in reasonable anticipation of litigation. *Id.*

If this information were to be released, it would expose the attorneys' work to scrutiny, and reveal preliminary litigation analysis and strategy. *Id.* This is precisely the type of information that the attorney work product privilege is designed to protect. *Id.*

**E. Exemption 6 and 7 (C)**

Exemption 6 shields information about individuals in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). For this exemption to apply, the information at issue must be maintained in a government file and "appl[y] to a particular individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982). Once this threshold is met, Exemption 6 requires the

agency to balance the individual's right to privacy against the public interest in disclosure.  *See Dep't of Air Force v. Rose,* 425 U.S. 352, 372 (1976); *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).

Exemption 7(C) protects law enforcement records or information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Because "the privacy inquiry of Exemptions 6 and 7(C) [is] essentially the same," *Judicial Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1125 (D.C. Cir. 2004), Defendant addresses the Exemption 6 and 7(C) withholdings jointly.  "[T]he privacy inquiry of Exemptions 6 and 7(C) [is] essentially the same," although Exemption 7(C) sets a lower invasion threshold to justify withholding.  *Judicial Watch, Inc*., 365 F.3d at 1125.  Thus, Exemption 7(C) embodies heightened privacy protections.  *See Dep't of Just. v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 756 (1989); *NARA v. Favish*, 541 U.S. 157, 165-66 (2004).  In light of the related nature of the inquiries under Exemptions 6 and 7(C), the DHS and CIA jointly applied the exemptions here, and jointly defend those withholdings.

The Supreme Court has adopted a broad construction of the privacy interests protected by Exemptions 6 and 7(C).  *See Reporters Comm*., 489 U.S. at 763.  Privacy is of particular importance in the FOIA context because disclosure under FOIA is tantamount to disclosure to the public at large.  *See Painting & Drywall Work Preservation Fund, Inc. v. HUD*, 936 F.2d 1300, 1302 (D.C. Cir. 1991).  By contrast, the courts have narrowly construed the public interest in disclosure of information.  The "only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is contribut[ing] significantly to public understanding of the operations or activities of the government.'"  *Dep't of Defense v. FLRA*, 510 U.S. 487, 495 (1994) (quoting *Reporters Comm*.,

489 U.S. at 775).  Plaintiff bears the burden of demonstrating that the release of the withheld information would serve this interest.  *See Carter v. Dep't of Commerce*, 830 F.2d 388, 391-92 & nn.8 & 13 (D.C. Cir. 1987).

As a law enforcement agency, DHS OIG uses Exemptions (b)(6) and (b)(7)(C) in concert. When determining whether to withhold information under (b)(6) and (b)(7)(C), DHS OIG assessed whether the individual had a substantial privacy interest that would outweigh any public interest in disclosure. Rufus Decl. ¶33.  In reviewing the responsive records, DHS OIG determined that individuals named and identified in the records as witnesses, OIG investigative personnel, and law enforcement officers had a substantial privacy interest that is implicated by the public release of law enforcement investigative materials. *Id.* DHS OIG balanced the privacy interest of these individuals with any FOIA public interest. In order to constitute a FOIA public interest, the information must shed light on the working of the government in the performance of its statutory duties and/or mission; the interest in non-disclosure must outweigh the FOIA public interest.  *See McGehee v. Dep't of Just.*, 800 F. Supp. 2d 220, 234 (D.D.C. 2011) ("the relevant question is not whether the public would like to know the names of FBI agents and victims involved, but whether knowing those names would shed light on the FBI's performance of its statutory duties"). "Substantial privacy interests cognizable under the FOIA are generally found to exist in such personal identifiable information as a person's name, physical address, email address, image, computer user ID, phone number, date of birth, criminal history, medical history, and social security number."  *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982).

In this instance, OIG witnesses are participating in a whistleblower investigation and providing sensitive information, which may subject them to harassment and/or embarrassment if their identity is revealed. Rufus Decl. ¶36.  Furthermore, the nature of DHS OIG's work is often

sensitive and contentious, which may subject DHS OIG's investigative personnel to harassment, if their identity or PII is disclosed. *Id.* The release of DHS OIG's investigative personnel and witnesses' PII and/or identifying information would cause "a clearly unwarranted invasion of personal privacy." *Id.*

In accordance with the FOIA, DHS OIG performed a line-by-line review of responsive records and segregated any releasable portions of the records that were not exempted. DHS OIG applied (b)(6) and (b)(7)(C) in instances where individuals witnesses. A review under (b)(6) and (b)(7)(C) to identify instances of DHS OIG's witnesses being redacted was conducted, after which review some full paragraphs or more than 50% of some paragraphs within DHS OIG's witness MOAs were redacted. Rufus Decl. ¶ 37.  These MOAs contain summaries of interviews with witnesses who provided information during the course of the investigation. *Id.*

The MOAs are written to track the actual interview between OIG's investigators and the witness; therefore, the MOAs contain highly identifiable information, which includes detailed background information regarding the witness, such as employment history and duties, specific interactions, meetings, and verbatim statements. *Id.* In those instances, information within the paragraph was not able to be segregated and the disclosure of information within those particular paragraphs would enable someone who had knowledge of the incident and/or institutional knowledge of the agency to readily identify the witness. Rufus Decl. ¶ 37; *see Alirez v. NLRB,* 676 F.2d 423, 428 (10th Cir. 1982) (finding that deletion of names and other identifying data pertaining to small group of co-workers was simply inadequate to protect them from embarrassment or reprisals because requester could still possibly identify individuals).

Further, the disclosure of OIG witnesses' PII potentially places the witnesses in jeopardy of retaliation and would have a chilling effect on whistleblowing activities. *Id.* ¶ 37.  Disclosure

of the identity and identifying information of DHS OIG's witnesses will impede DHS OIG's ability to conduct future investigations. *Id.* ¶ 38.  If a witness is aware that his or her identity will be disclosed, he or she may be less forthcoming or less likely to provide information during the course of an OIG investigation. *Id.* DHS OIG's Whistleblower Unit investigates whistleblower retaliation and reprisal complaints and relies on truthful information and candid discussions with witnesses to assist in the determination as to whether reprisal allegations are substantiated or unsubstantiated. *Id.*

DHS has determined that disclosing the identity of an OIG witness will deter both witnesses and complainants from being forthcoming for fear of harassment and/or retaliation. *Id.* DHS avers that protecting these individuals' identifying information outweighs any public interest in how the government is performing its statutory duties, primarily because exposing witnesses will not only result in the chilling of whistleblowing, but also will hinder DHS OIG's ability to fulfill its mission of providing independent oversight and detecting waste, fraud, and abuse in future investigations. *Id.*  On the other hand, the releasing of names and identifying information of OIG's witnesses, investigative personnel and law enforcement officers would provide little to no understanding of how the Department carries out its mission. *Id.*

Additionally, any disclosure of the identity of an employee who provides information during an OIG investigation would violate DHS OIG's obligation under the Inspector General Act of 1978 to keep such disclosures confidential. Therefore, law enforcement officers, DHS OIG's investigative personnel, and all individuals who served in a witness capacity during DHS OIG's investigation were afforded protection of their substantial privacy interests.  *Id.* ¶ 39.

The CIA invoked FOIA Exemption (b)(6) to withhold exempt information regarding individuals involved in the underlying subject matter of the FOIA request. Specifically, the Agency

withheld identifying information, in part or in full, of the officials named in the responsive documents. Blaine Decl. ¶ 31. These persons maintain a strong privacy interest in this information because its release could subject them to harassment, embarrassment, or unwanted contact. *Id.* Conversely, there has been no evidence of a countervailing public interest presented that would be served by such disclosure. *Id.* The release of the identities of these individuals would not serve the core purpose of FOIA-informing the public as to the operations and activities of the government. *Id* ¶ 32.

Accordingly, because there is no qualifying public interest in disclosure, the CIA determined that the release of this information would constitute a clearly unwarranted invasion of these individuals' personal privacy. *Id.* Additionally, to the extent that the identifying information is that of CIA personnel, the protection of Exemption (b) (3) in conjunction with the CIA Act jointly applies to such information. *Id.*

The CIA invoked Exemption (b)(7)(C) in a limited number of circumstances--and in conjunction with other exemptions--to withhold identifying information regarding the individuals named in the materials at issue as witnesses or potential witnesses in the investigation. *Id.* ¶ 36. Additionally, the CIA asserted Exemption (b)(7)(C) in one instance to withhold a reference to a separate investigation. In all instances in which the Agency asserted Exemption (b)(7)(C), it also asserted Exemption (b)(3) and/or Exemption (b)(6). *Id.*¶ 36. The CIA withheld the names of current and former CIA employees and other federal government personnel under Exemption (b)(7)(C) because these persons maintain a strong privacy interest. *Id.*

Without a qualifying public interest in revealing the names of these individuals, release of identifying details in connection with this matter could subject them to harassment, embarrassment, or unwanted contact by media or other interested parties. Accordingly, the CIA

determined that disclosure of this information could reasonably be expected to constitute an unwarranted invasion of personal privacy pursuant to Exemption (b) (7) (C).

### F.  Exemptions (b)(7)(D) and (E)

The CIA has also asserted Exemption (7)(D) and 7(E) for certain records and information contained in the records at issue were "compiled for law enforcement purposes" within the meaning of Exemption (b)(7). *Id.*  Exemption 7(D) protects "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to disclose the identity of a confidential source."  5 U.S.C. § 552(b)(7)(D).  Unlike Exemption 7(C), this exemption does not require a balancing of public and private interests.  *See Dow Jones & Co. v. U.S. Dep't of Justice*, 917 F.2d 571, 575-76 (D.C. Cir. 1990).  Exemption 7(D) applies if an agency establishes that a source has provided information under either an express or implied promise of confidentiality.  *See Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995).

Exemption 7(E) protects law enforcement records or information when disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see also Mayer Brown LLP v. IRS,* 562 F.3d 1190, 1193 (D.C. Cir. 2009) ("the importance of deterrence explains why the exemption is written in broad and general terms" and further explains why the exemption looks "not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk").  The D.C. Circuit has "set[] a relatively low bar for the agency to justify withholding" under FOIA Exemption 7(E).  *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). Such information may be withheld "not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not

just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Mayer Brown*, 562 F.3d at 1193.

Moreover, "[t]he first clause of Exemption 7(E) affords 'categorical' protection for 'techniques and procedures' used in law enforcement investigations or prosecutions," *McRae v. Dep't of Just.*, 869 F. Supp. 2d 151, 168 (D.D.C. 2012) (citing *Pub. Emps. for Envtl. Responsibility v. U.S. Section Int'l Boundary & Water Commn.* ("PEER"), 839 F. Supp. 2d 304, 327 (D.D.C. 2012)), whereas the second clause "separately protects 'guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law.'" *Id.* Furthermore, "[t]he government must show that the records contain law-enforcement techniques and procedures that are generally unknown to the public." *Elkins v. Fed. Aviation Admin.*, 134 F. Supp. 3d 1, 4 (D.D.C. 2015) (quoting *Am. Immigration Council v. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 245 (D.D.C. 2013)).

In this matter, the CIA has asserted Exemption (b) (7) (D) to protect the identities of persons who provided information in connection with this investigation. Blaine Decl. ¶ 37. The CIA has also asserted Exemption (b) (7) (D) to withhold information that contains details that would tend to identify the individuals who provided information by revealing their position in the Agency and/or their role in, or knowledge of, the underlying events. *Id.* In all instances in which the Agency asserted Exemption (b) (7) (D), it also asserted Exemption (b) (3) or Exemption (b) (6).

The performance of CIA OIG's mission to conduct independent investigations is heavily reliant upon its access to unfiltered information provided by confidential sources. *Id.* ¶ 38. Disclosure of sources and the information that they provide would foreseeably harm the Agency

by severely compromising CIA OIG's ability to perform those duties.  Without the assurance of confidentiality, sources may not provide the CIA OIG with unfiltered information. *Id.*

The CIA OIG invoked Exemption (b) (7) (E) in this case to protect information related to techniques and procedures used by the CIA OIG in relation to its investigatory mission. *Id.* ¶ 39. If these techniques and procedures were disclosed, this information could be used to try to circumvent them or otherwise neutralize their effectiveness. *Id.* For the limited amount of information for which the CIA asserted Exemption (b) (7) (E), the CIA also asserted Exemption (b) (3) under the National Security Act because the techniques and procedures employed by the CIA OIG to conduct its investigations also constitute intelligence methods protected from disclosure under the National Security Act. *Id.*

### III.  All Reasonably Segregable Material Has Been Released to Plaintiff.

Under the FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b).  Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't. of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *Fischer*, 596 F. Supp. 2d at 44. To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that information it has withheld cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008).  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester.  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  Moreover, an agency is not required to "commit significant time and resources

to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Mead Data*, 566 F.2d at 261, n.55.

Here, DHS OIG and CIA have released all reasonably segregable non-exempt information from documents properly responsive to plaintiff's FOIA. During the processing of Plaintiff's requests, each responsive page was individually examined to identify non-exempt information that could be reasonably segregated from exempt information for release. Rufus Decl. Section III; Blaine Decl. ¶ 40. All segregable information was released to Plaintiff. *Id.* As demonstrated herein, the only information withheld by DHS OIG consists of information that would trigger reasonably foreseeable harm to one or more interests protected by the cited FOIA Exemptions. *Id.*

A line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied. Rufus Decl. Section III, Blaine Decl. ¶40. With respect to the records that were released, all information not exempted from disclosure pursuant to the FOIA Exemptions specified above was correctly segregated, and non-exempt portions were released. Id. DHS OIG did not withhold any non-exempt information on the grounds that it was non-segregable.

## **CONCLUSION**

For the reasons set forth above, Defendant respectfully requests that this Court grant judgment in favor of DHS OIG.

<div style="margin-left: 40%;">

Respectfully submitted,

MATTHEW M. GRAVES, D.C. BAR # 481052
United States Attorney

BRIAN HUDAK
Civil Chief

By: /s/_____
BENTON G. PETERSON, Bar # 1029849

</div>

Assistant U.S. Attorney
601 D St., N.W.
Washington, D.C. 20530
(202) 252-2534