# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANDREW BAKAJ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1580 (ABJ) |
| | ) | |
| DEPARTMENT OF | ) | |
| HOMELAND SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Andrew Bakaj brought this action on May 29, 2019 under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking to compel defendant, the United States Department of Homeland Security ("DHS") to release certain records.  *See* Compl. [Dkt. # 1] at 1.[1] Pending before the Court is defendant's motion for summary judgment.  Def.'s Mot. for Summ. J., Def.'s Mem. of Law in Supp. of Mot. for Summ. J. [Dkt. # 68] ("Mot."); *see also* Def.'s Statement of Material Facts As To Which There Is No Genuine Issue [Dkt. # 72-1] ("Def.'s SOF").

---

[1]    The Court granted plaintiff's motion for leave to file an amended complaint on August 20, 2019.  Min. Order (Aug. 20, 2019); *see* Pl.'s Mot. for Leave to File First Am. Compl. [Dkt. # 12]; First Am. Compl. [Dkt. # 13] ("Am. Compl.").

The government has provided the plaintiff and the Court with a *Vaughn* Index,[2] and the motion is supported by two declarations explaining the justification for the government's invocation of five separate FOIA exemptions.  *See* Decl. of Darcia Rufus in Supp. of the U.S.'s Resp. to Pl[.'s] FOIA Req. [Dkt. # 68-1] ("Rufus Decl."); Decl. of Vanna Blaine, Info. Review Officer, Litig. Info. Review Office, Central. Intel. Agency [Dkt. # 68-3] ("Blaine Decl."); DHS Office of Inspector General *Vaughn* Index [Dkt. # 68-2] ("*Vaughn* Index").  Plaintiff opposes the motion for summary judgment in part, Mem. in Opp. to Def.'s Mot. for Summ. J. [Dkt. # 73] ("Opp."); *see also* Resp. to Def.'s SOF [Dkt. # 73-1], and the motion is fully briefed.  Reply in Supp. of Mot. [Dkt. # 76] ("Reply").

At this point, all of the disputes between the parties have been resolved except for one very narrow issue: whether the government's redactions of the names of four CIA officials were proper.  *See* Opp. at 2.  For the reasons stated below, the Court finds that it was proper for the agency to withhold the names under Exemption 3, which covers information specifically exempted from disclosure by statute, and that it has not waived its right to withhold the material through official disclosure.  Therefore, the Court need not assess whether the other invocation of the other exemptions would have been proper as well.  Moreover, particularly given the narrow scope of the issues to be resolved, the Court finds, in its discretion, after review of the entire record, that it is not necessary to conduct in camera review before ruling on the question of whether all reasonably

---

2      Production of a "*Vaughn* Index" is one way that an agency can explain its response to a FOIA request.  In order for a court to pass on the agency's action, the agency must submit a "Vaughn index and/or accompanying affidavits or declarations" specifically showing why documents were redacted or withheld in full.  *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009).  The *Vaughn* Index must "provide[] a relatively detailed justification, specifically identif[y] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply."  *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006), quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).

segregable material has been disclosed.  Therefore, defendant's motion for summary judgment will be **GRANTED**.

## BACKGROUND

On May 29, 2019, plaintiff – a former Special Agent in the Central Intelligence Agency's ("CIA") Office of the Inspector General – initiated this action, alleging that he had sent a FOIA request on May 7, 2019 to DHS's Office of the Inspector General ("OIG"), but that he had not received a substantive response.  Rufus Decl. ¶¶ 6, 6(a);[3] Whistleblower Retaliation Report of Investigation, Ex. 1 to Opp. [Dkt. # 73-2] ("May 2022 ROI") at 2 (including plaintiff's title); *see also* Compl. at 1 ("seeking the expedited processing of agency records").  The agency searched its "FOIA inbox" and found plaintiff's request, which included two attachments that the agency determined could not be opened for security reasons.  Rufus Decl. ¶ 6(b).  The agency's FOIA Unit emailed plaintiff's attorney, informing him that "the request needed to be properly submitted in the body of an email before a FOIA file could be opened."  Rufus Decl. ¶ 6(b).

On July 18, 2019, the agency moved for summary judgment on the grounds that "a proper perfected FOIA request was never filed subsequent to the email from OIG FOIA."  Def.'s Mot. for Summ. J., Def.'s Mem. of Law in Supp. of Mot. for Summ. J. [Dkt. # 8] at 2; *see* Rufus Decl. ¶ 6(c).  That same day, plaintiff submitted a perfected FOIA request to DHS.  Def.'s SOF ¶ 1, citing Rufus Decl. ¶ 6(d); Resp. to Def.'s SOF ¶ 1.[4]

---

3       A summons was issued on June 4, 2019.  Summons in a Civil Action [Dkt. # 4]; *see* Rufus Decl. ¶ 6 (noting that plaintiff filed summons and complaint on June 4, 2019).

4       The July 18, 2019 FOIA request appears on the docket as an attachment to the defendant's opposition to plaintiff's request to modify the Court's August 29, 2019 Minute Order.  Letter from Bradley P. Moss, Att'y, to Avery Roselle, FOIA Officer, OIG DHS, Attachment A to Def.'s Opp. to Pl.'s Req. to Modify Min. Order Dated Aug. 29, 2019 [Dkt. # 16-1].

Plaintiff's perfected FOIA request sought all DHS records of the OIG's investigation into whistleblower retaliation allegations he raised concerning other CIA officials, "including, but not limited to, all Memoranda of Investigative Activity [MOA]." Def.'s SOF ¶ 2, citing Rufus Decl. ¶ 6(d); Resp. to Def.'s SOF ¶ 2; *see* May 2022 ROI at 2 (Report of Investigation into plaintiff's allegations that "senior officials retaliated against him for providing information to the Inspector General for the Intelligence Community").

On July 25, 2019, DHS OIG acknowledged plaintiff's FOIA request and assigned it a case number. Def.'s SOF ¶ 3; Resp. to Def.'s SOF ¶ 3. Three weeks later, on August 16, 2019, plaintiff filed a motion for leave to amend his complaint to reflect that he had filed a new FOIA request in July but had received "no substantive response." Def.'s SOF ¶ 5; Resp. to Def.'s SOF ¶ 5; Pl.'s Mot. for Leave to File First Am. Compl.

On September 6, 2019, plaintiff narrowed his request to "the [Report of Investigation] and its enclosures," which included the memoranda of investigative activity. Def.'s SOF ¶ 7, citing Rufus Decl. ¶ 6(i); Resp. to Def.'s SOF ¶ 7; *see also* Def.'s Status Report Pursuant to the Ct.'s Aug. 29, 2019 Order [Dkt. # 17] ("Sept. 26, 2019 Rep."). The agency subsequently determined that it needed to consult with other federal agencies prior to releasing the documents. Def.'s SOF ¶ 8, citing Rufus Decl. ¶ 6(j); Resp. to Def.'s SOF ¶ 8; *see also* Sept. 26, 2019 Rep. In particular, DHS referred four sets of records to the CIA. Blaine Decl. ¶¶ 6–10; *see Vaughn* Index at 2 (noting that DHS OIG consulted with and referred documents to CIA and the Office of the Director of National Intelligence ("ODNI")).[5]

---

5       *See* Def.'s SOF ¶ 42 n.1 ("On July 6, 2022, [d]efendant was notified that [p]laintiff did not intend to challenge material processed from ODNI."); Resp. to Def.'s SOF ¶ 42 ("The [p]laintiff does not dispute the factual recitations of these statements.").

On September 18, 2019, plaintiff reiterated his request for the agency to "process all responsive records." Def.'s SOF ¶ 9, citing Rufus Decl. ¶ 6(k); Resp. to Def.'s SOF ¶ 9; *see* Sept. 26, 2019 Rep. Eight months later, on May 21, 2021 – after DHS consulted with other federal agencies – DHS OIG produced "all responsive records" to plaintiff. Def.'s SOF ¶ 13, citing Rufus Decl. ¶ 6(m); Resp. to Def.'s SOF ¶ 13. Plaintiff objected to the designation of certain material as "classified" and so, after discussions between the parties, the government produced previously withheld information on December 16, 2021 and then again on May 10, 2022. Def.'s SOF ¶ 37, citing Rufus Decl. ¶ 23; Resp. to Def.'s SOF ¶ 37; *see* Def.'s SOF ¶¶ 14–16, citing Rufus Decl. ¶¶ 6(n)–(p); Resp. to Def.'s SOF ¶¶ 14–16; *see also* Whistleblower Retaliation Report of Investigation, Ex. 2 to Opp. [Dkt. # 73-3] (May 2021 version); May 2022 ROI.

In its final response on May 10, 2022, DHS OIG told plaintiff that "32 pages of records had been released in full, 334 pages were released in part and 1,460 were previously referred to other federal government agencies for their review and direct response to the [p]laintiff." Def.'s SOF ¶ 38, citing Rufus Decl. ¶ 24; Resp. to Def.'s SOF ¶ 38; *see Vaughn* Index at 1. According to DHS OIG, before the response was issued, a "line-by-line review was conducted to determine what information was exempt from disclosure under the FOIA," as well as a sensitivity review in consultation with two other federal government agencies. Def.'s SOF ¶ 36, citing Rufus Decl. ¶ 22; Resp. to Def.'s SOF ¶ 36; *see also* Blaine Decl. ¶ 40 ("In evaluating responsive documents, the CIA conducted a document-by-document and line-by-line review and released all reasonably segregable non-exempt information."). The agency also informed plaintiff that the redactions in the documents he received were made pursuant to FOIA Exemptions 1, 2, 3, 5, 6, 7(C), 7(D) and/or 7(E). Def.'s SOF ¶¶ 38, 40, citing Rufus Decl. ¶ 24; Resp. to Def.'s SOF ¶¶ 38, 40; *see Vaughn* Index at 1; Blaine Decl. ¶ 7; 5 U.S.C. §§ 552(b)(1)–(3), (5)–(6), 7(C)–(E). On

June 17, 2022, plaintiff informed the agency of his objections to the final production.  Def.'s SOF ¶ 17, citing Rufus Decl. ¶ 6(q); Resp. to Def.'s SOF ¶ 17.  The agency did not produce another version of records in response.  *See* Def.'s SOF ¶ 38 (noting that May 2022 production was "final response"); Resp. to Def.'s SOF ¶ 38.

On October 14, 2022, the agency filed the pending motion.  Mot.  It maintains it is entitled to summary judgment because it "has conducted a reasonable search of agency records, has disclosed all non-exempt responsive records, and has not improperly withheld any responsive records from [p]laintiff."  *Id.* at 2.  Plaintiff only opposes the motion "with respect to four specific redactions of the names of those CIA officials who were determined to have unlawfully retaliated against him and whose identities were withheld for privacy reasons under FOIA Exemptions 3, 6, and 7(C)."  Opp. at 2.[6]  But he also requested that the Court conduct an "*in camera* review of the significant volume of redactions applied to responsive records to evaluate DHS/CIA's claims that they reasonably segregated any non-exempt portions of the responsive records."  *Id.*

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary

---

6    Plaintiff does not "challeng[e] the adequacy of DHS's searches or the appropriateness of the other invoked redactions."  Opp. at 2 n.2.

judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

FOIA cases are typically and appropriately decided on motions for summary judgment. *Brayton v. Off. of the U.S. Trade Rep.,* 641 F.3d 521, 527 (D.C. Cir. 2011). In FOIA cases, the agency bears the ultimate burden of proof. *See U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). The Court may award summary judgment based solely on information provided in an agency's affidavits or declarations that identify "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). These affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

## ANALYSIS

FOIA requires government agencies to release records upon request in order to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire &*

*Rubber Co.*, 437 U.S. 214, 242 (1978).  The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless the records fall within one of nine narrowly construed exemptions. *See* 5 U.S.C. § 552(b); *FBI v. Abramson*, 456 U.S. 615, 630 (1982), citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (noting that FOIA exemptions are to be narrowly construed).  This framework "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918, 925 (D.C. Cir. 2003).

To prevail in a FOIA action, an agency must satisfy two elements.  First, the agency must demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Second, an agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conf. on C.R. v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005).  Any "reasonably segregable" information in a responsive record must be released, 5 U.S.C. § 552(b), and "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc.*, 566 F.2d at 260.  A district court has an "affirmative duty to consider the segregability issue sua sponte," *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) (internal quotation marks omitted), and the agency "bears the burden of demonstrating that the records were properly withheld."  *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020), quoting *Summers v. U.S. Dep't of Justice*, 140 F.3d 1077, 2080 (D.C. Cir. 1998); *see Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 673 (D.C. Cir. 2016) ("The

agency bears the burden to establish the applicability of a claimed exemption to any records or portions of records it seeks to withhold.").

To meet its burden, an agency may submit a *Vaughn* Index to explain why it withheld information, *Summers*, 140 F.3d at 1080; *see Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014), and can also "submit affidavits that show, with reasonable specificity, why the documents fall within the exemption."  *Evans*, 951 F.3d at 583, quoting *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) (internal quotation marks omitted); *see Vaughn v. Rosen*, 484 F.2d 820, 825–28 (D.C. Cir. 1973) (holding that when agency withholds documents or parts of documents, it must explain what it is withholding and the applicable statutory exemptions).

Plaintiff does not contend that the agency failed to demonstrate that it made a good faith effort to search for the requested records.  *See* Opp. at 2 n.2; *Oglesby*, 920 F.2d at 68.  But he does dispute whether the agency appropriately redacted the names of "CIA officials who were determined to have unlawfully retaliated against [plaintiff] and whose identities were withheld for privacy reasons under FOIA Exemptions 3, 6, and 7(C)."  Opp. at 2.  He also urges the Court to conduct an in camera review of the Report of Investigation, the witness interviews, and the Memoranda of Investigative Activity to ensure that the government properly released all segregable portions.  *See* Opp. at 13–16; *see also id.* at 10.

## I.      The Agency's Redactions of the CIA Officials' Names

The agency maintains that several FOIA exemptions apply to the redactions of information about specific government officials, including Exemption 3.[7]  *See* Mot. at 17–21.

Under Exemption 3, agencies need not produce materials "specifically exempted from disclosure by statute," provided that such statute leaves no discretion on disclosure. 5 U.S.C. § 552(b)(3)(A)(i).  "Under that exemption, the [agency] need only show that the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute." *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009).  But under the "public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999); *see Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) ("[W]hen information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's otherwise valid exemption claim.").  This includes materials that would otherwise be covered by Exemption 3.  *See Cottone*, 192 F.3d at 553–54.

The D.C. Circuit has established a "strict test" to be applied to claims of official disclosure. *Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir. 2011).  For an item to be officially acknowledged, three criterion must be met:

> First, the information requested must be as specific as the information previously released.  Second, the information requested must match the information previously disclosed . . . .  Third, . . . the information requested must already have been made public through an official and documented disclosure.

---

[7]      Plaintiff points out that the government did not identify Exemption 3 as a basis for redacting the names of the RMOs until May 2022, when the final version of the records was released.  *See* Opp. at 21 n.8.  Even so, the government is only required to assert all of its exemptions "in the original district court proceedings," not prior. *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 854 F.3d 675, 679 (D.C. Cir. 2017), quoting *Maydak v. U.S. Dep't of Just.*, 218 F.3d 760, 764 (D.C. Cir. 2000).

*Fitzgibbon*, 911 F.2d at 765.  A plaintiff mounting this type of challenge "must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld."  *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).  As the Supreme Court recently summarized:

> Lower courts have explained that the official acknowledgement doctrine recognizes the reality that official confirmation of sensitive information may pose risks that unofficial disclosure does not.  It is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so.  Official confirmation may dispel lingering doubts or reveal that the information currently in the public domain is incomplete or itself a cover story.

*United States v. Zubaydah*, 142 S. Ct. 959, 970 (2022) (internal citations and quotation marks omitted); *see Knight First Amend. Inst. at Columbia Univ. v. CIA*, 11 F.4th 810, 816 (D.C. Cir. 2021) ("We do not 'deem 'official' a disclosure made by someone other than the agency from which the information is being sought.'"), quoting *Frugone v. CIA*, 169 F.3d 772, 774 (D.C. Cir. 1999); *Afshar*, 720 F.2d at 1133–34 (no official disclosure of information by former CIA agents and officials who published books discussing the existence of CIA stations in foreign countries and the specific intelligence relationship between the CIA and foreign intelligence services, even after the books went through the agency's prepublication review).

Pursuant to Exemption 3, the government redacted "the names of OIG witnesses, specifically employees who provided information during the course of the DHS OIG Whistleblower investigation."  *Vaughn* Index at 7; *see also* Mot. at 18.

The May 2022 Report of Investigation includes the titles of five Responsible Management Officials ("RMOs") who "engaged in substantiated whistleblower retaliation," and notes that four of their names are redacted pursuant to Exemption 3, among others.

(U) The DHS-OIG refers this Report and its findings to the CIA to determine appropriate corrective action. Although the **RMOs** who engaged in substantiated whistleblower retaliation in this case are no longer Federal employees, given the **RMOs'** levels of seniority, actual knowledge of the Complainant's protected activities, and subsequent related retaliatory actions, we recommend, at a minimum, that the Report be referred to the CIA's Office of Security (or other appropriate office) to determine whether its findings affect the security clearances of the following **RMOs**: 1) Former CIA IG David Buckley; 2) Former Deputy CIA IG _____; 3) Former CIA-OIG AIGI _____ 4) Former CIA-OIG DAIGI _____ and 5) Former CIA-OIG SAC _____ [58] The DHS-OIG will conduct follow-up on this recommendation no later than six months from the date this Report is received by the CIA.

(b)(3) CIAAct
(b)(6)

May 2022 ROI at 35; *id.* at 2 n.2 (defining RMO).  The May 2022 Report also contains a redacted list of "key witnesses" whom DHS OIG interviewed; although three individuals have the title "RMO," their complete titles are redacted.  *Id.* at 4–5; *see also id.* at 4–5 n.3 (reporting that Buckley "declined to be interviewed").

The agency points to the Inspector General Act of 1978, as amended, 5 U.S.C. App. 3 ("IG Act"), the National Security Act of 1947, as amended, 50 U.S.C. § 3024 ("National Security Act"), and the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507 ("CIA Act"), as the exempting statutes.  Mot. at 17–21; *see* Rufus Decl. ¶¶ 28–29 (IG Act); Blaine Decl. ¶ 22 (National Security Act), ¶ 23 (CIA Act).

Plaintiff takes issue with the Exemption 3 redactions that omit the names of CIA officials with the title "RMO."  *See* Opp. at 16 (plaintiff "has narrowed his challenge to the appropriateness of DHS OIG/CIA's withholdings to only four specific redactions: the names of the four RMOs").  He does not appear to dispute that these names would normally be exempted from disclosure by statute; rather, he "disputes that Exemption 3 protection still applies to at least three of the four RMOs given that their specific names and affiliations have previously been publicly acknowledged and/or authorized for public release."  Opp. at 21; *see id.* at 21–23.

A.      **The material is exempt from disclosure.**

1.      **Inspector General Act**

The IG Act provides that the "Inspector General shall not, after receipt of a complaint or information from an employee, disclose the identity of the employee without the consent of the employee, unless the Inspector General determines the disclosure is unavoidable during the course of the investigation."  5 U.S.C. App. 3 § 7(b).  This is the type of non-discretionary statutory language that Exemption 3 contemplates.  *See Braun v. United States Postal Serv.*, 317 F. Supp. 3d 540, 548 (D.D.C. 2018).

Darcia Rufus avers in her declaration that she is an "Assistant Counsel to the Inspector General," who "advise[s] on a wide range of information and disclosure law matters including the [FOIA]," and assists in the representation of DHS OIG in FOIA litigation and document production.  Rufus Decl. ¶ 1.  Her sworn affidavit states that "DHS OIG" is the entity that issued a final response in this matter.  Rufus Decl. ¶ 6(m).

Because plaintiff does not dispute that the RMOs provided information to the Inspector General in the course of an investigation, *see* Rufus Decl. ¶ 29; *see generally* Opp. at 21, and the record does not show that these individuals consented to the disclosure of their names, the Court finds that the redactions of the names of the four CIA officials are protected by the IG Act.

2.      **National Security Act and CIA Act**

The National Security Act requires the Director of National Intelligence to broadly "protect intelligence sources and methods from unauthorized disclosure."  50 U.S.C. § 3024(i)(1). Similarly, Section 6 of the CIA Act mandates that "[i]n the interests of the security of the foreign intelligence activities of the United States and in order further to implement section 3024(i) of this title . . . the Director of National Intelligence shall be responsible for protecting intelligence sources

13

and methods from unauthorized disclosure," and therefore, "the Agency shall be exempted from . . . the provisions of any other law which require the publication or disclosure of the . . . names, official titles, salaries, or numbers of personnel employed by the Agency[.]"  50 U.S.C. § 3507. These non-discretionary mandates to withhold certain information also comply with Exemption 3's terms.  *See Morley v. CIA*, 508 F.3d 1108, 1125–26 (D.C. Cir. 2007) (upholding use of the National Security Act and the CIA Act for Exemption 3 purposes); *Military Audit Project*, 656 F.2d at 749 ("[D]ocuments that might disclose the names, initials, pseudonyms and official titles of CIA personnel . . . are properly withheld by the government.") (internal footnotes omitted).  "[W]ith respect to [an] exemption 3 claim," a court must "determine whether or not the material withheld falls within the exemption claimed," and "[i]n the course of discharging this task, naturally, [the court should] accord substantial weight and due consideration to the CIA's affidavits." *Fitzgibbon*, 911 F.2d at 762.

The government has shown that the information was withheld at the direction of the Director of National Intelligence, or someone with authority to identify and withhold national intelligence information.  *See* 50 U.S.C. § 3024(i)(1); 50 U.S.C. § 3507.  In Vanna Blaine's declaration, she states that she has "original classification authority at the TOP SECRET level under written delegation of authority pursuant to section 1.3(c) of Executive Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010)," and is therefore "authorized to assess the current and proper classification of CIA information."  Blaine Decl. ¶ 2.[8]  Second, Blaine avers that "the CIA withheld the titles, names, functions, and organizational information of CIA employees" "pursuant to Section 6 of the CIA Act," Blaine Decl. ¶ 23, and that Section 102A(i)(1) of the National Security Act also applies

---

8       Executive Order 13,526 vests original classification authority with agency heads, which can be delegated to lower-level employees.  Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) §§ 1.3(a)(2), (c).

to the information contained in the documents, which involves intelligence sources and methods. Blaine Decl. ¶ 20.

The names of CIA officials fall within the scope of the National Security and CIA Acts, and therefore, the government may also rely upon these statutes to withhold records under Exemption 3.[9]

### B.    The record does not support a finding that the agency officially acknowledged the withheld information.

Plaintiff disputes that Exemption 3 "still applies" to the agency's withholdings and argues that the agency has "publicly acknowledged and/or authorized for public release" the names of the RMOs who unlawfully retaliated against him. Opp. at 21. He goes so far as to list the names of the three senior CIA officials who he says "have been clearly publicly acknowledged," given that they were publicly identified as having served in the specific CIA positions referenced in the Report of Investigation at the time the retaliation occurred. *Id.* at 22 (citing to public sources such as LinkedIn, U.S. Senate questionnaires, and federal government websites).

The Report of Investigation does list the titles of five "RMOs who engaged in substantiated whistleblower retaliation," May 2022 ROI at 35, and it notes that the retaliation took place around April 2014. *See id.* at 5–9 (timeline of events). But none of the sources plaintiff points to are from the agency itself: he has not shown that any "official and documented disclosure" from the CIA or DHS ever occurred. *See* Opp. at 22; *Fitzgibbon*, 911 F.2d at 765.

---

9       Plaintiff also challenges the agency's withholdings pursuant to Exemption 6 and 7(C). *See* Opp. at 2, 19. Because the Court finds that the government properly invoked Exemption 3, it will not go on to consider whether other exemptions apply. *See Larson*, 565 F.3d at 862–63 ("[A]gencies may invoke the exemptions independently and courts may uphold agency action under one exemption without considering the applicability of the other.").

Therefore, the government has not waived its Exemption 3 claims, and disclosure of the redacted names cannot be compelled.[10]

## II.     In Camera Review

If an agency provides the appropriate justification for withholding records in response to a FOIA request, "a district court need not conduct its own in camera search for segregable non-exempt information unless the agency response is vague, its claims too sweeping, or there is a reason to suspect bad faith." *Mead Data Cent., Inc.*, 566 F.2d at 262.  When "affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith," a court may grant summary judgment without conducting an in camera review. *Hayden*, 608 F.2d at 1387.  A district court has "broad discretion" in determining whether in camera review is necessary. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 577–78 (D.C. Cir. 1996). When the record includes deficient declarations, "the courts generally will request that the agency supplement its supporting declarations" instead of ordering discovery or the submission of documents for in camera review. *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 185 F. Supp. 2d 54, 65 (D.D.C. 2002), citing *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995) (other citation omitted).  "The ultimate criterion [about whether to conduct in camera inspection] is simply this: Whether the district judge believes that *in camera* inspection is needed

---

10      Plaintiff also argues that the public interest warrants disclosure of the names of the RMOs. *See* Opp. at 18–21.  Although a court must "weigh the 'privacy interest in non-disclosure against the public interest in the release of the records'" to determine whether Exemptions 6 and 7(C) apply, *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999), quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989), plaintiff cites no authority to support his contention that a strong public interest can overcome Exemption 3.

in order to make a responsible de novo determination on the claims of exemption." *Carter v. U.S. Dep't of Com.*, 830 F.2d 388, 392 (D.C. Cir. 1987) (italics in original).

Here, plaintiff asks the Court to conduct an in camera review because "the agency declarations provided little beyond boilerplate assertions that a document-by-document and line-by-line review was conducted and that no reasonably segregable non-exempt information could be released." Opp. at 15; *see id.* at 13–16. However, the government submitted a *Vaughn* Index from DHS OIG explaining why it withheld specific information on specific pages, *Vaughn* Index; *see Summers*, 140 F.3d at 1080, and also provided affidavits from officials at DHS and the CIA describing why each exemption applied to the records. Rufus Decl. ¶¶ 27–39; Blaine Decl. ¶¶ 12–39; *see Evans*, 951 F.3d at 583.[11] Plaintiff does not argue that there is a reason to suspect bad faith

---

[11] Plaintiff contends:

> Notwithstanding the fact this was an investigation into CIA OIG and actions by its personnel, and concerned primarily CIA OIG information, CIA did not even submit a <u>Vaughn</u> index of its own. Because it is unclear from the submitted pleadings whether DHS OIG's <u>Vaughn</u> [index] actually addressed CIA's specific redactions, especially with respect to justifying the redaction of the identities of the four RMOs, the Court should respectfully require further elaboration from the Government or consider ordering CIA to submit a proper <u>Vaughn</u> index.

Opp. at 17 n.6.

The agency bears the burden of establishing that a claimed FOIA exemption applies. Affidavits submitted to meet that burden "sometimes take the form of a *Vaughn* index, but there is no fixed rule establishing what such an affidavit must look like. It is the function, not the form, of the index that is important." *Citizens for Resp. & Ethics in Washington*, 746 F.3d at 1088 (internal brackets, citations, and quotation marks omitted). In the DHS OIG's *Vaughn* Index, that agency reports that it "consulted with the [CIA] . . . [and] each agency applied exemptions related to their equities. Exemptions provided by CIA in response to [p]laintiff's challenges are addressed in a declaration by that agency, which has been attached as a separate exhibit to [d]efendant's filing." *Vaughn* Index at 2. And indeed, the declaration from Vanna Blaine explains the reasons why the CIA applied each FOIA exemption to the withheld records, and specifies that the CIA withheld the "titles, names, functions, and organizational information of CIA employees," under Section 6 of the CIA Act pursuant to Exemption 3. Blaine Decl. ¶ 23; *see generally id.*

on the part of the government.  And his arguments as to the necessity of in camera review are unpersuasive in light of the level of detail contained in the *Vaughn* Index and the declarations. Therefore, the Court finds in its discretion that in camera review is not necessary.

**CONCLUSION**

Defendant's motion for summary judgment will be **GRANTED**; the redacted material was properly withheld under Exemption 3, and in camera review is not necessary to ensure that all reasonably segregable material has been released.

A separate order will issue.


AMY BERMAN JACKSON
United States District Judge


DATE: September 19, 2023